IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN MAUS,

                Plaintiff,

    v.

STEVEN RATSCH JR., BART HOTTENSTEIN,
THOMAS SHARP, ERIN DUNAHAY, and
JEREMIAH CURTIS,[1]

                Defendants.

OPINION and ORDER

23-cv-814-jdp

---

Plaintiff Brian Maus, proceeding without counsel, was formerly incarcerated at Jackson Correctional Institution. Maus alleges that officials at that prison fabricated a conduct report against him after he complained that a correctional officer profanely berated him regarding an interaction that he had with another staff member. I granted Maus leave to proceed on First Amendment retaliation claims against several prison officials.

Defendants move for summary judgment. I will grant that motion for Maus's claims against some of the defendants. But I will deny that motion concerning two defendants for whom Maus has submitted evidence that could lead a reasonable jury to conclude that they intended to discipline him without legitimate reason.

## PRELIMINARY MATTERS

Along with his summary judgment opposition materials, Maus moves to strike portions of defendants' summary judgment materials referring to (1) video footage of the relevant

---

[1] I have amended the caption to include defendants' full names as reflected in their submissions.

interaction between Maus and defendant Steven Ratsch, and (2) a DOC investigation report regarding the incident. I will deny this motion for two reasons.

First, Maus is too late: he did not file a valid formal motion to compel this discovery as the court discussed in its preliminary pretrial conference order, instead waiting until he filed his summary judgment opposition to raise the issue.[2] See Dkt. 27, at 9–10. ("If the parties do not bring discovery problems to the court's attention quickly, then they cannot complain that they ran out of time to get information that they needed for summary judgment or for trial.").

Second, it appears that Maus was indeed given access to these materials. Defendants explain that Maus was in a county jail at the time that defendants filed for summary judgment, so they provided Maus's parole agent with certain materials that the DOC does not permit prisoners at non-DOC facilities to permanently possess, such as video from inside a prison. Maus refers to details on the video in his opposition brief, so it appears that he has seen the video. I will not strike any portion of defendants' materials.

Defendants object to many of Maus's proposed findings of fact on the ground that they are unsupported by evidence. Maus's proposed findings generally cite to a document that he calls "PPFOF," but which I take to be paragraphs in the sworn declaration that he submitted along with his summary judgment opposition materials. *See* Dkt. 45 and Dkt. 46. Given the generosity with which I must construe submissions filed by unrepresented litigants, I will accept and consider Maus's proposed findings of fact.

---

[2] Maus did file a motion to compel that was denied for his failure to first confer with defendants. Dkt. 29. That motion was also too vague to tell whether he sought the materials that he now discusses.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Brian Maus is a former inmate at Jackson Correctional Institution (JCI). Defendants all worked at JCI: Bart Hottenstein, Thomas Sharp, Erin Dunahay, and Jeremiah Curtis were captains. Steven Ratsch was a correctional officer.

Maus had a longstanding dispute with prison officials over the hours that the law library was open. For much of 2023, the law library wouldn't open until 2:30 p.m. Maus wrote letters to prison staff stating that the lack of law library access was violating his rights. Maus states that officers, including defendant Ratsch, would make "smart remarks" to him about how nothing would change even if he complained. Dkt. 45, ¶ 7.

On August 17, 2023, Maus went to the law library before 2:30 p.m.; he hadn't heard that it was closed until 2:30 that day. Maus stopped at the education office to get his flash drive. Staff member Ms. Boehm told Maus that the library was closed until 2:30. Maus told Boehm that he would be writing to the DOC secretary and filing a grievance about his access to the courts being denied.

Maus returned to the library at 2:30 and began working on one of his legal cases. Shortly thereafter, Ratsch came into the law library. Accordingly to Maus, Ratsch "started screaming, yelling and swearing at [him]." *Id.*, ¶ 10. In particular, Ratsch stated, "if you fuckin' want to harass and threaten Ms. Boehm by filing an inmate complaint and writing [DOC secretary] Carr about the fuckin' law library being fuckin' closed . . . . he will harass Maus and that Maus can take his fuckin' ass back to his unit if he can't treat staff with respect." *Id.*[3] After Maus told

---

[3] I have edited Maus's quotations for spelling.

Ratsch that he would file an inmate grievance and write to the DOC secretary about Boehm's and Ratsch's misconduct, Ratsch became "madder" and "ordered Maus to bring his fuckin' ass out of his desk." *Id.* When Maus arrived at Ratsch's station, Ratsch "started screaming yelling and swearing at Maus louder," and stated "since . . . Maus thinks he has a fuckin' right to write inmate complaints and [write to the DOC secretary], Maus can take his fuckin' ass back to his unit until he learns to respect staff." *Id.* Maus then returned to his unit.

The next day Maus wrote several supervisors and staff letters about Ratsch yelling and swearing at him. Defendant Hottenstein was asked to investigate Maus's allegations that Ratsch had acted unprofessionally toward him. Over the next few weeks, Hottenstein interviewed several witnesses.

A prisoner who wished to keep his identity confidential stated that he was in the library when the incident occurred and that Ratsch was "agitated" with Maus about how he had treated Boehm but that Matsch didn't swear at Maus. Dkt. 41, ¶ 29. Defendants Hottenstein and Sharp interviewed Maus, who largely recounted his account above. Hottenstein and another officer interviewed Officer Smith, who had been in the area; Smith stated that he hadn't heard Ratsch yell or swear at Maus.

Hottenstein and another officer interviewed Ratsch, who stated that Ratsch "sternly" told Maus that he could not speak disrespectfully to staff, and that he never swore at Maus. *Id.*, ¶ 53. Ratsch stated that Maus left the library and they talked in another officer's office, where Ratsch attempted to explain to Maus why his behavior toward Boehm had been inappropriate. Ratsch stated that he told Maus to leave the library and that he could return when he could speak appropriately to staff.

After these interviews, Hottenstein submitted a report to supervisors. The warden responded that she did not think that Ratsch had committed a work violation, and suggested further consideration over whether to charge Maus with a disciplinary infraction for lying about staff. Hottenstein responded, "Sounds good, thank you. If you want me to author a [conduct report] I will." Dkt. 38-1, at 24.

Shortly thereafter, Hottenstein authored a conduct report charging Maus with lying about Ratsch acting unprofessionally toward him, based on his interviews and viewing law library video footage. A disciplinary hearing was held before defendants Dunahay and Curtis.

At the hearing, Maus recounted his version of events. Maus asked three witnesses to provide written testimony. Ratsch stated that he believed that Maus was unnecessarily harassing Boehm over the law library opening time. Nicholas Rost, another inmate who was near the library during the incident, stated that Ratsch was "cranky" and yelled at Maus but did not threaten him other than telling him that he was kicking him out of the library. Dkt. 37-2, at 7. Hottenstein stated that Ratsch didn't seem to have an aggressive posture in the video.

Defendants Dunahay and Curtis found Maus guilty of lying about staff, stating that "is more likely than not Officer Ratsch remained professional from the witnesses accounts of the incident and staff statements." *Id.* at 6. Maus was given a disposition of 20 days room confinement, and 20 days loss of electronics. Maus states that after the hearing, Dunahay told him "[t]hat Dunahay and her staff will go out of their way to protect each other." Dkt. 45, ¶ 15. Dunahay states that she "would never make a determination on a conduct report just to protect an employee." Dkt. 35, ¶ 41.

ANALYSIS

I granted Maus leave to proceed on First Amendment retaliation claims against defendants Ratsch, Hottenstein, and Sharp for falsifying a conduct report against him and against defendants Curtis and Dunahay for finding him guilty because they did so not for legitimate reasons but instead to protect Ratsch.

To win a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in the defendant's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

If the plaintiff makes this showing, the burden shifts to defendants to show that they would have taken the same action even without the retaliatory motive. *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011). Regardless of retaliatory motive, a plaintiff can't win a retaliation claim for a conduct report given for legitimate reasons. *See Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015); *Turner v. Boughton*, No. 17-cv-203-jdp, 2021 WL 1200597, at *17 (W.D. Wis. Mar. 30, 2021).

In considering a retaliation claim, the court must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (internal quotations and citations omitted); *see also Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020) (citing *Babcock*). And prison staffers do not violate the Constitution merely by making errors in disciplinary proceedings. *See Turner*, 2021 WL 1200597, at *17 (citing *Heffernan v. City of Paterson*, 578 U.S. 266, 272 (2016)).

6

**A. Defendants Hottenstein, Sharp, and Ratsch**

It is undisputed that defendants Sharp and Hottenstein investigated Maus's complaint against Ratsch for acting unprofessionally by yelling profanities at him and threatening him. After the other witnesses largely corroborated Ratsch's version of events, the warden suggested that Hottenstein issue Maus a conduct report for lying about staff. Hottenstein then authored the conduct report.

Defendants raise a series of arguments concerning the merits of these claims. For instance, they argue that Maus lied about Ratsch's conduct, so he didn't engage in First Amendment-protected speech that could support a retaliation claim. *See Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005). Maus states that was telling the truth about the incident. Ordinarily this would be an issue of disputed fact that I could not resolve on summary judgment. But defendants produce video footage of the incident which they say conclusively disproves Maus's version of events. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (court may disregard party's proposed facts if they are clearly contradicted by video footage).

The video provided by defendants isn't accompanied by audio. It shows a roughly 20-second interaction between Ratsch and Maus, in which Ratsch points at Maus and speaks to him in what appears to be an agitated manner. Dkt. 37-1 (placeholder docket entry for the footage), at 11:57–12:19. A reasonable jury couldn't characterize Ratsch's speech as "yelling" but, without accompanying audio, I can't rule out Maus's allegations that Ratsch repeatedly swore at him and threatened him. It also doesn't show the second part of the incident as described by Maus, in which Maus and Ratsch spoke outside of the library at Ratsch's station. The video does not conclusively disprove Maus's version of events.

Defendants argue in the alternative that (1) Hottenstein isn't liable because he reasonably believed that Maus had indeed lied about his interaction with Ratsch; (2) neither Ratsch nor Sharp were personally involved in issuing the conduct report authored by Hottenstein; and (3) the warden's suggestion to issue the conduct report was the true cause of the conduct report, not Maus's protected speech.

Regarding defendant Hottenstein, it is undisputed that he investigated Maus's allegations of Ratsch's misconduct and then issued the conduct report. Those facts alone cannot support a retaliation claim, because there is no evidence suggesting that Hottenstein intended to frame Maus for the charge of lying about staff. The evidence uncovered in the investigation largely corroborated Ratsch's version of events over Maus's. A reasonable jury could conclude only that Hottenstein thought that he was issuing Maus a legitimate conduct report. I will grant summary judgment to defendants on the claim against Hottenstein.

I don't agree with defendants that Ratsch and Sharp lacked personal involvement in issuing the conduct report. Even though Hottenstein was the actual author of the conduct report, both Ratsch and Sharp contributed to the conduct report: Sharp helped investigate Maus's complaint against Ratsch, and Ratsch was the main witness supporting the disciplinary charge of lying against staff. Nonetheless, there is no evidence that Sharp retaliated against Maus. All Sharp did was investigate Maus's accusation and report his findings. Nothing in the evidence suggests that Sharp intended frame Maus for the charge of lying about staff. I will grant summary judgment to defendants on the claim against Sharp.

As for defendant Ratsch, there *is* evidence suggesting that he intended to frame Maus for lying about staff. If a jury believed Maus's version of events, Ratsch responded to Maus's complaint against him by fabricating an alternate version of events in which Maus lied about

8

their interaction in the law library, leading to Maus's conduct report. Ratsch's key role in providing the investigators with allegedly false evidence used to charge Maus is enough to support a retaliation claim against Ratsch.

Defendants' argument that the warden's suggestion to issue a conduct report—and not Maus's protected speech itself—was the actual "but-for" cause of the conduct report is unpersuasive, at least as it relates to the claim against Ratsch. The warden suggested punishing Maus only after being aware of Ratsch's account of the events, and a reasonable jury could conclude that Ratsch understood that contradicting an inmate's account of an incident could lead to a lying charge. I will not grant summary judgment to defendants on the merits of Maus's claim against Ratsch.

## B.  Defendants Curtis and Dunahay

Maus alleges that Curtis and Dunahay found him guilty of lying about staff to protect Ratsch and not for any legitimate belief that Maus had actually lied about his interaction with Ratsch.

There isn't any evidence that Curtis intended to retaliate against Maus or that Curtis voted to convict Maus for any reason other than that he thought that Maus had lied about Ratsch's actions. So I will grant defendants summary judgment on the claim against Curtis.

But Maus provides additional evidence against Dunahay: he says that after the disciplinary hearing was over, Dunahay told him "that Dunahay and her staff will go out of their way to protect each other." If a reasonable jury believed that Dunahay made this statement, there are multiple inferences it might draw from it. Perhaps Dunahay meant only that lying about staff would be punished. But it's possible that she meant that she intended to cover for a staffer's misconduct by illegitimately punishing the prisoner complaining about it.

9

I conclude that there is sufficient evidence for a reasonable jury to conclude that Dunahay voted to convict Maus purely for retaliatory reasons and not because she thought that Maus had lied about Ratsch's conduct.

## C. Qualified immunity

Defendants also contend that they are entitled to qualified immunity on Maus's claims. Under the doctrine of qualified immunity, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Defendants contend that Milton can't cite any authority establishing Maus's claims against Ratsch and Dunahay, particularly given the specific facts of this case. But it is clearly established that correctional officers violate the Constitution when they retaliate against an inmate for protected speech complaining about mistreatment. *Pearson v. Welborn*, 471 F.3d 732, 741–42 (7th Cir. 2006). And nothing about the specific facts here presents unusual circumstances that could lead Ratsch and Dunahay to claim unawareness that their alleged misconduct violated the First Amendment. So Ratsch and Dunahay are not entitled to

summary judgment by way of qualified immunity. I will deny defendants' motion for summary judgment on Maus's claims against Ratsch and Dunahay, and those claims will proceed to trial.

To help Maus prepare for trial, I will shortly issue a separate trial preparation order that provides detailed information about how trial works and how Maus should prepare. Maus should review the trial preparation order carefully and notify defendants' counsel or the court if he has specific questions about preparing for trial.

ORDER

IT IS ORDERED that:

1.  Plaintiff Brian Maus's motion to strike, Dkt. 48, is DENIED.

2.  Defendants' motion for summary judgment, Dkt. 34, is GRANTED in part and DENIED in part.

3.  Defendants Hottenstein, Sharp, and Curtis are DISMISSED from the case.

Entered May 26, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge